# Exhibit A

D.C. Superior Court
01/16/2020 16:25PM
Clerk of the Court

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## CIVIL DIVISION

**RACHEL A. CURRAN**
1315 11th St., NW, Apt. B
Washington, DC  20001

>

   **Plaintiff**          >

**v.**                >   **Case No.** _____

               >

**WELLS FARGO BANK, N.A.**
420 Montgomery St.
San Francisco, CA  94163

**Serve: WELLS FARGO BANK, N.A.**
  Corporation Service Company (CSC)
  1090 Vermont Ave., NW, Ste. 430
  Washington, DC  20005

               >   **DEMAND FOR JURY TRIAL**

    **Defendant**        >

               >

## COMPLAINT

1.  Plaintiff Rachel Curran as and for her complaint against Defendant, Wells Fargo

Bank, N.A., alleges as follows:

### NATURE OF ACTION

2.  This is an action for money damages due to Plaintiff for Defendant's negligence

in failing to accurately calculate Plaintiff's qualification for a loan modification, thus forcing her

to abruptly sell her home, resulting in lost equity and severe emotional distress. Defendant

committed negligence per se and engaged in false or deceptive practices in violation of DC

Code, sec. 28-3904.

## PARTIES

3.      Plaintiff is, and at all times relevant to this proceeding has been, a resident of the District of Columbia who owned a home here when the events that serve as the basis for this complained occurred.

4.      Defendant Wells Fargo Bank, N.A., is a mortgage lender with headquarters located in San Francisco, CA. Defendant is licensed and authorized to do business in the District of Columbia.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action.

6.      This Court has personal jurisdiction over Defendant because it is licensed to do business in the District of Columbia.

7.      The events or omissions giving rise to this claim occurred in, were directed to, and/or emanated from the District of Columbia.

## FACTUAL ALLEGATIONS

8.      In 2009, Congress set aside $50 billion in stimulus funding for the Home Affordable Modification Program (HAMP), a program designed to keep people in their homes who were facing unemployment or underemployment.

9.      Defendant accepted up to $6.4 billion in HAMP funding, but failed to fulfill its obligations and duties to customers under HAMP's loan modification program.

10.     Rather than use software developed by Fannie Mae to calculate a borrower's eligibility for HAMP, Defendant developed its own proprietary tool.

11.     Defendant has since admitted that this tool caused systematic miscalculations that led to Defendant wrongfully denying loan modifications (designed to substantially reduce a borrower's payments to avoid foreclosure) to over 870 borrowers who qualified for a loan modification under HAMP.

12.     Plaintiff was the exact type of person who HAMP was supposed to help.  Prior to 2008, she was working full-time and making mortgage payments on her home at 435 Ridge St., NW, in Washington, DC. However, in February 2009, she lost her job to downsizing and needed the help that HAMP was supposed to provide.

13.     After months and months of requiring Plaintiff to submit the same or substantially similar documents in support of her request for a modification, Defendant miscalculated her eligibility and wrongfully denied Plaintiff a HAMP loan modification, forcing her to sell her home to avoid foreclosure.

14.     The sale of Plaintiff's home was completed on January 14, 2016.

15.     As part of its voluntary remediation program, Defendant sent Plaintiff a check for $15,000 on September 12, 2018.  The accompanying letter informed Plaintiff that Defendant had discovered that she wasn't offered a loan modification due to a "faulty calculation" and, if not for the error, she would have been approved for a HAMP modification.

16.     Defendant's letter did not explain how Defendant determined the amount offered by check, but nonetheless assured Plaintiff that it should be sufficient to "make things right."

17.     To participate in HAMP, Defendant was required to comply with all the HAMP program requirements.  In exchange for up to $6.4 billion in HAMP funds, Defendant agreed to abide by all HAMP guidelines and procedures which required loan servicers participating in HAMP to issue a mortgage modification to any borrowers who met all the criteria to qualify.

18.     To be eligible for HAMP, borrowers needed to show that they had suffered financial hardship (e.g., job loss) and be able to pay 31% of their monthly income toward the mortgage.

19.     Fannie Mae created a software tool for loan servicers to use for calculating Net Present Value for HAMP purposes. In simplified terms, the basic formula for calculating Net Present Value is: Net Present Value = (Expected Revenue for Modified Mortgage) - (Expected Cost of Foreclosing).

20.     Fannie Mae's Net Present Value calculator was made available to HAMP-participating loan servicers, but loan servicers with $40 billion or more in mortgage loans were allowed to use their own proprietary Net Present Value calculator, which Defendant did.

21.     In a July 2018 SEC filing, Defendant revealed that it had discovered a "calculation error" in the software tool it used to determine whether to issue a loan modification. Defendant said the error was corrected on October 20, 2015; yet, Defendant did not disclose the error for another three years.

22.     In an October SEC filing, Defendant found "related errors" that had continued until April 30, 2018. These errors caused an overstatement of the attorneys' fees that were included for purposes of determining whether a customer qualified for a loan modification. As a result of the attorney's fees overstatement, 870 customers were incorrectly denied a loan modification.

23.     Plaintiff was forced to sell her home to avoid foreclosure in late 2015, around the same time Defendant now says it discovered the software error.

24.     The $15,000 check sent by Defendant does not begin to make up for the severe financial and other consequences that Defendant's calculation error inflicted on the Plaintiff.

Due to their error, Plaintiff lost hundreds of thousands of dollars in ،   equity by being forced to sell her home of 20 years suddenly and prematurely. Since the sale, the price of real estate in her neighborhood has increased substantially and continues to increase almost daily.

25.     Plaintiff was forced to sell her home for much less than if she had been able to wait and improve the property to sell at her leisure.

26.     Defendant's error caused Plaintiff a significant amount of stress. In December and January, Plaintiff was forced to rapidly sell her house and pack 20 years' worth of belongings and then move within three weeks after selling of the property, causing her to incur additional financial hardship and emotional distress.

## TOLLING ALLEGATIONS

27.     Plaintiff could not have discovered, through reasonable diligence, that Defendant's software contained calculation errors that improperly denied her a HAMP loan modification.

28.     The evidence and means of discovering the calculation errors, and the systemic nature of the problem, were within Defendant's exclusive control.

29.     As a result, any applicable statutes of limitations are tolled.

30.     In addition, any applicable statutes of limitation have been tolled by Defendant's knowing, active, and fraudulent concealment of the fact alleged herein.

31.     Defendant kept Plaintiff ignorant of vital information essential to the pursuit of her claims, without any fault or lack of diligence on the part of the Plaintiff.

32.     Defendant admits in an SEC filing that it knew about the software errors as early as October 2015, yet Defendant considered Plaintiff's loan modification request by applying

faulty standards and did not inform Plaintiff about the errors until late 2018, years after she was forced to sell her home under threat of foreclosure.

33.     Defendant was under a continuous duty to disclose the information to Plaintiff.

34.     Plaintiff reasonably relied on Defendant's concealment of a material fact.

35.     As a result, Defendant is estopped from relying on a statute of limitations defense.

## COUNT 1:

## NEGLIGENCE

36.     Defendant owed a duty to Plaintiff to implement HAMP's requirements for offering mortgage modifications.

37.     Defendant had a duty to exercise reasonable care in the creation, implementation, and use of its internal software to determine whether a mortgage modification was required under HAMP regulations.

38.     Defendant had a duty to ensure that borrowers who met all objective requirements were given a HAMP mortgage modification.

39.     Defendant denied or failed to offer a mortgage modification to Plaintiff who met all the objective requirements to receive a permanent HAMP mortgage modification.

40.     Defendant breached its duties to Plaintiff by failing to perform mortgage servicing function consistent with its responsibilities to Plaintiff.

41.     Defendant created, implemented, and used an internal software program and protocols that were flawed and defective and incorrectly calculated to determine whether a borrower was entitled to a HAMP loan modification.

42.     Defendant failed to properly supervise its agents and employees, including its loss mitigation and collection personnel; foreclosure attorneys; and technical, computer, and

engineering employees who developed, implemented, and used the internal software to determine whether a borrower qualified for a HAMP mortgage modification.

43.     Defendant made inaccurate calculations and determinations of Plaintiff's eligibility for a HAMP mortgage modification.

44.     Defendant did not conduct sufficient testing to determine whether its internal software program was correctly calculating whether a borrower was entitled to a HAMP mortgage modification.

45.     Defendant failed to give HAMP mortgage modifications and other foreclosure alternatives to qualified buyers.

46.     Defendant concealed the error in its internal software program from approximately 2015 through October 2018.

47.     Defendant knew or should have known that borrowers such as the Plaintiff would suffer injury as a result of Defendant's failure to exercise reasonable care.

48.     Defendant's violation of law and/or negligence were the direct and proximate cause of Plaintiff's injuries, harms, and economic loss, which Plaintiff suffered and continues to suffer.

49.     As a consequence of Defendant's negligence, Plaintiff suffered the otherwise avoidable loss of home; increased fees and other costs to avoid or attempt to avoid foreclosure; loss of equity in home; loss of opportunities to pursue other refinancing or loss mitigation strategies; increased costs associated with lower credit scores; and significant stress causing emotional distress.

## COUNT II:

## UNFAIR OR DECEPTIVE TRADE PRACTICES

50.     Plaintiff incorporates all allegations as if fully set forth herein.

51.     Washington, DC's, "Unfair or Deceptive Trade Practices," DC Code, sec. 23-

3904, prohibits "any person to engage in an unfair or deceptive trade practice, whether or not any

consumer is in fact misled, deceived, or damaged thereby, including:

52.     Defendant engaged in business acts and practices that are immoral, unethical,

unscrupulous, and substantially injurious to consumers by, among other things:

> a.  Represents that goods or services have a source, sponsorship, approval,
>     certification, accessories, characteristics, ingredients, uses, benefits, or
>     qualities that they do not have;
>
> b.  Represent that goods or services are of a particular standard, quality,
>     grade, style, or model, if in fact they are another;
>
> c.  Misrepresent as to a material fact which has a tendency to mislead;
>
> d.  Represent that a transaction confers or involves rights, remedies, or
>     obligations which it does not have or involve, or which are prohibited by
>     law;
>
> e.  Fail to state a material fact if such failure tends to mislead; and
>
> f.  Use innuendo or ambiguity as to a material fact, which has a tendency to
>     mislead.

53.     Defendant engaged in business acts and practices that are immoral, unethical,

unscrupulous, and substantially injurious to consumers by, among other things:

a. Creating, implementing, and using an internal software program and protocols that were flawed and incorrectly calculated whether a borrower was entitled to a HAMP mortgage modification;

b. Failing to perform mortgaging servicing functions consistent with its responsibilities to Plaintiff, including failure to properly supervise its agents and employees, including its loss mitigation and collection personnel, foreclosure attorneys; and technical, computer, and engineering employees who developed, implemented, and used the internal software to determine whether a borrower qualified for a HAMP mortgage modification;

c. Making inaccurate calculations and determinations of Plaintiff's eligibility for a HAMP mortgage modification;

d. Not conducting sufficient testing to determine whether its internal software program was correctly calculating whether a borrower was entitled to a HAMP loan modification;

e. Failure to give HAMP mortgage modifications and other foreclosure alternatives to qualified borrowers; and

f. Concealing the error in its internal software program from approximately 2015 through October 2018.

54.     As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent business acts and practices, Plaintiff suffered injury in fact and loss of money and property, including:

a. Initiation of wrongful foreclosure proceedings;

b. Otherwise unavoidable sale of home to avoid foreclosure;

c. Increased fees and other costs to avoid or attempt to avoid foreclosure;

d. Loss in equity of home that was sold to avoid foreclosure; and

e. Increased costs associated with lowered credit scores.

55.     Because of Defendant's unlawful, unfair, and fraudulent business practices,

Plaintiff is entitled to relief, including attorneys' fees and costs, restitution, and permanent

injunction enjoining Defendant from its unlawful, fraudulent, and unfair practices.

## COUNT III:

## NEGLIGENCE PER SE

56.     Plaintiff incorporates by reference the above allegations as if fully set forth

herein.

57.     Defendant violated the District of Columbia's Unfair or Deceptive Trade

Practices Act, as fully disclosed.  Moreover, as discussed above, Defendant also violated federal

HAMP regulations which stated that if a borrower meets all qualifying criteria, the servicer must

offer the modification.

58.     Defendant's violation of the District's Unfair or Deceptive Trade Practices Act

and HAMP regulations directly and proximately caused Plaintiff's injuries, including, but not

limited to the otherwise avoidable loss of home; increased fees and other costs to avoid or

attempt to avoid foreclosure; loss of equity in home; loss of opportunities to pursue other

refinancing or loss mitigation strategies; increased costs associated with lower credit scores; and

significant stress causing severe emotional distress.

59.     Plaintiff's injuries resulted from the kind of occurrence that the referenced DC

Code section and HAMP regulations were designed to prevent.

## PRAYER FOR RELIEF

**WHERFORE,** Plaintiff requests judgment be entered against Defendant and that the

Court grant the following relief:

      a.   Judgment against Defendant for Plaintiff's asserted causes of action;

      b.  An award of damages in the amount of $500,000;

      c.  An award of reasonable attorneys' fees and other litigation cost reasonably

          incurred; and

      d.  Any and all relief to which Plaintiff may be entitled.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

Causton A. Toney, Esq. DC Bar #364055
606 Powhatan Pl., NW, Washington, DC 20011
(202) 545-1043 (O)
(202)-330-5576 (F)
E-mail: caustontoney@yahoo.com

*Counsel for Plaintiff*

Rachel A. Curran
1315 11ᵗʰ St., NW, Apt. B
Washington, DC 20001
(202) 393-7065
E-mail: rcurrande4@gmail.com

*Plaintiff*

## VERIFICATION

I, Rachel A. Curran, being first sworn on oath, state, under criminal penalties for the making of a false statement, that I have read the foregoing Complaint by me subscribed and attest that its contents are true and accurate to the best of my knowledge and belief.

Rachel A. Curran, Plaintiff

**DISTRICT OF COLUMBIA, SS**

Subscribed and sworn to before me on this the ___16___ day of ___January___ 2020.

Notary Public
My commission expires: ___08-14-2024___

## VERIFICATION

I, Causton A. Toney, Esq., counsel for plaintiff Rachel Curran, do solemnly declare and affirm, under criminal penalties for the making of a false statement, that I have read the foregoing Complaint by me subscribed and that the factual statements contained therein are true to the best of my knowledge, information and belief.

Causton A. Toney, Esq. DC Bar #364055
Counsel for Plaintiff
606 Powhatan Pl., NW
Washington, DC 20011
(202) 545-1043 (O)
(202)-330-5576 (FX)
E-mail: caustontoney@yahoo.com



**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

RACHEL A. CURRAN
_____
                          Plaintiff

vs.

                                              Case Number  2020

WELLS FARGO BANK N.A.
_____
                          Defendant

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Causton A. Toney, Esq.

_____          *Clerk of the Court*
Name of Plaintiff's Attorney

606 POWHATAN PL. NW               By _____
Address                                             Deputy Clerk
WASHINGTON DC 20011

202 545 1043                          Date _____
Telephone
如需翻译,请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Dể có một bai dịch, hãy gọi (202)879-4828
번역을 원하시면, (202)879-4828로 전화주십시오     በተዘጋጀ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT. IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]                                              Super. Ct. Civ. R. 4

# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

## CIVIL DIVISION

**RACHEL A. CURRAN**
1315 11th St., NW, Apt. B
Washington, DC 20001

>

         **Plaintiff**            >

**v.**                         >    **Case No.** _____

                               >

**WELLS FARGO BANK, N.A.**
420 Montgomery St.
San Francisco, CA 94163


**Serve: WELLS FARGO BANK, N.A.**
      Corporation Service Company (CSC)
      1090 Vermont Ave., NW, Ste. 430
      Washington, DC 20005

                             >    **DEMAND FOR JURY TRIAL**

         **Defendant**              >

                             >

## COMPLAINT

1.    Plaintiff Rachel Curran as and for her complaint against Defendant, Wells Fargo Bank, N.A., alleges as follows:

## NATURE OF ACTION

2.    This is an action for money damages due to Plaintiff for Defendant's negligence in failing to accurately calculate Plaintiff's qualification for a loan modification, thus forcing her to abruptly sell her home, resulting in lost equity and severe emotional distress. Defendant committed negligence per se and engaged in false or deceptive practices in violation of DC Code, sec. 28-3904.

## PARTIES

3.     Plaintiff is, and at all times relevant to this proceeding has been, a resident of the District of Columbia who owned a home here when the events that serve as the basis for this complained occurred.

4.     Defendant Wells Fargo Bank, N.A., is a mortgage lender with headquarters located in San Francisco, CA. Defendant is licensed and authorized to do business in the District of Columbia.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action.

6.     This Court has personal jurisdiction over Defendant because it is licensed to do business in the District of Columbia.

7.     The events or omissions giving rise to this claim occurred in, were directed to, and/or emanated from the District of Columbia.

## FACTUAL ALLEGATIONS

8.     In 2009, Congress set aside $50 billion in stimulus funding for the Home Affordable Modification Program (HAMP), a program designed to keep people in their homes who were facing unemployment or underemployment.

9.     Defendant accepted up to $6.4 billion in HAMP funding, but failed to fulfill its obligations and duties to customers under HAMP's loan modification program.

10.    Rather than use software developed by Fannie Mae to calculate a borrower's eligibility for HAMP, Defendant developed its own proprietary tool.

11.     Defendant has since admitted that this tool caused systematic miscalculations that led to Defendant wrongfully denying loan modifications (designed to substantially reduce a borrower's payments to avoid foreclosure) to over 870 borrowers who qualified for a loan modification under HAMP.

12.     Plaintiff was the exact type of person who HAMP was supposed to help.  Prior to 2008, she was working full-time and making mortgage payments on her home at 435 Ridge St., NW, in Washington, DC.  However, in February 2009, she lost her job to downsizing and needed the help that HAMP was supposed to provide.

13.     After months and months of requiring Plaintiff to submit the same or substantially similar documents in support of her request for a modification, Defendant miscalculated her eligibility and wrongfully denied Plaintiff a HAMP loan modification, forcing her to sell her home to avoid foreclosure.

14.     The sale of Plaintiff's home was completed on January 14, 2016.

15.     As part of its voluntary remediation program, Defendant sent Plaintiff a check for $15,000 on September 12, 2018.  The accompanying letter informed Plaintiff that Defendant had discovered that she wasn't offered a loan modification due to a "faulty calculation" and, if not for the error, she would have been approved for a HAMP modification.

16.     Defendant's letter did not explain how Defendant determined the amount offered by check, but nonetheless assured Plaintiff that it should be sufficient to "make things right."

17.     To participate in HAMP, Defendant was required to comply with all the HAMP program requirements.  In exchange for up to $6.4 billion in HAMP funds, Defendant agreed to abide by all HAMP guidelines and procedures which required loan servicers participating in HAMP to issue a mortgage modification to any borrowers who met all the criteria to qualify.

18.     To be eligible for HAMP, borrowers needed to show that they had suffered financial hardship (e.g., job loss) and be able to pay 31% of their monthly income toward the mortgage.

19.     Fannie Mae created a software tool for loan servicers to use for calculating Net Present Value for HAMP purposes. In simplified terms, the basic formula for calculating Net Present Value is: Net Present Value   (Expected Revenue for Modified Mortgage) - (Expected Cost of Foreclosing).

20.     Fannie Mae's Net Present Value calculator was made available to HAMP-participating loan servicers, but loan servicers with $40 billion or more in mortgage loans were allowed to use their own proprietary Net Present Value calculator, which Defendant did.

21.     In a July 2018 SEC filing, Defendant revealed that it had discovered a "calculation error" in the software tool it used to determine whether to issue a loan modification. Defendant said the error was corrected on October 20, 2015; yet, Defendant did not disclose the error for another three years.

22.     In an October SEC filing, Defendant found "related errors" that had continued until April 30, 2018. These errors caused an overstatement of the attorneys' fees that were included for purposes of determining whether a customer qualified for a loan modification. As a result of the attorney's fees overstatement, 870 customers were incorrectly denied a loan modification.

23.     Plaintiff was forced to sell her home to avoid foreclosure in late 2015, around the same time Defendant now says it discovered the software error.

24.     The $15,000 check sent by Defendant does not begin to make up for the severe financial and other consequences that Defendant's calculation error inflicted on the Plaintiff.

Due to their error, Plaintiff lost hundreds of thousands of dollars in equity by being forced to sell her home of 20 years suddenly and prematurely. Since the sale, the price of real estate in her neighborhood has increased substantially and continues to increase almost daily.

25.      Plaintiff was forced to sell her home for much less than if she had been able to wait and improve the property to sell at her leisure.

26.      Defendant's error caused Plaintiff a significant amount of stress. In December and January, Plaintiff was forced to rapidly sell her house and pack 20 years' worth of belongings and then move within three weeks after selling of the property, causing her to incur additional financial hardship and emotional distress.

## TOLLING ALLEGATIONS

27.      Plaintiff could not have discovered, through reasonable diligence, that Defendant's software contained calculation errors that improperly denied her a HAMP loan modification.

28.      The evidence and means of discovering the calculation errors, and the systemic nature of the problem, were within Defendant's exclusive control.

29.      As a result, any applicable statutes of limitations are tolled.

30.      In addition, any applicable statutes of limitation have been tolled by Defendant's knowing, active, and fraudulent concealment of the fact alleged herein.

31.      Defendant kept Plaintiff ignorant of vital information essential to the pursuit of her claims, without any fault or lack of diligence on the part of the Plaintiff.

32.      Defendant admits in an SEC filing that it knew about the software errors as early as October 2015, yet Defendant considered Plaintiff's loan modification request by applying

faulty standards and did not inform Plaintiff about the errors until late 2018, years after she was forced to sell her home under threat of foreclosure.

33.     Defendant was under a continuous duty to disclose the information to Plaintiff.

34.     Plaintiff reasonably relied on Defendant's concealment of a material fact.

35.     As a result, Defendant is estopped from relying on a statute of limitations defense.

## COUNT 1:

## NEGLIGENCE

36.     Defendant owed a duty to Plaintiff to implement HAMP's requirements for offering mortgage modifications.

37.     Defendant had a duty to exercise reasonable care in the creation, implementation, and use of its internal software to determine whether a mortgage modification was required under HAMP regulations.

38.     Defendant had a duty to ensure that borrowers who met all objective requirements were given a HAMP mortgage modification.

39.     Defendant denied or failed to offer a mortgage modification to Plaintiff who met all the objective requirements to receive a permanent HAMP mortgage modification.

40.     Defendant breached its duties to Plaintiff by failing to perform mortgage servicing function consistent with its responsibilities to Plaintiff.

41.     Defendant created, implemented, and used an internal software program and protocols that were flawed and defective and incorrectly calculated to determine whether a borrower was entitled to a HAMP loan modification.

42.     Defendant failed to properly supervise its agents and employees, including its loss mitigation and collection personnel; foreclosure attorneys; and technical, computer, and

engineering employees who developed, implemented, and used the internal software to determine whether a borrower qualified for a HAMP mortgage modification.

43.     Defendant made inaccurate calculations and determinations of Plaintiff's eligibility for a HAMP mortgage modification.

44.     Defendant did not conduct sufficient testing to determine whether its internal software program was correctly calculating whether a borrower was entitled to a HAMP mortgage modification.

45.     Defendant failed to give HAMP mortgage modifications and other foreclosure alternatives to qualified buyers.

46.     Defendant concealed the error in its internal software program from approximately 2015 through October 2018.

47.     Defendant knew or should have known that borrowers such as the Plaintiff would suffer injury as a result of Defendant's failure to exercise reasonable care.

48.     Defendant's violation of law and/or negligence were the direct and proximate cause of Plaintiff's injuries, harms, and economic loss, which Plaintiff suffered and continues to suffer.

49.     As a consequence of Defendant's negligence, Plaintiff suffered the otherwise avoidable loss of home; increased fees and other costs to avoid or attempt to avoid foreclosure; loss of equity in home; loss of opportunities to pursue other refinancing or loss mitigation strategies; increased costs associated with lower credit scores; and significant stress causing emotional distress.

## COUNT II:

## UNFAIR OR DECEPTIVE TRADE PRACTICES

50. Plaintiff incorporates all allegations as if fully set forth herein.

51. Washington, DC's, "Unfair or Deceptive Trade Practices," DC Code, sec. 23-3904, prohibits "any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged thereby, including:

52. Defendant engaged in business acts and practices that are immoral, unethical, unscrupulous, and substantially injurious to consumers by, among other things:

    a. Represents that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or qualities that they do not have;

    b. Represent that goods or services are of a particular standard, quality, grade, style, or model, if in fact they are another;

    c. Misrepresent as to a material fact which has a tendency to mislead;

    d. Represent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

    e. Fail to state a material fact if such failure tends to mislead; and

    f. Use innuendo or ambiguity as to a material fact, which has a tendency to mislead.

53. Defendant engaged in business acts and practices that are immoral, unethical, unscrupulous, and substantially injurious to consumers by, among other things:

a. Creating, implementing, and using an internal software program and protocols that were flawed and incorrectly calculated whether a borrower was entitled to a HAMP mortgage modification;

b. Failing to perform mortgaging servicing functions consistent with its responsibilities to Plaintiff, including failure to properly supervise its agents and employees, including its loss mitigation and collection personnel, foreclosure attorneys; and technical, computer, and engineering employees who developed, implemented, and used the internal software to determine whether a borrower qualified for a HAMP mortgage modification;

c. Making inaccurate calculations and determinations of Plaintiff's eligibility for a HAMP mortgage modification;

d. Not conducting sufficient testing to determine whether its internal software program was correctly calculating whether a borrower was entitled to a HAMP loan modification;

e. Failure to give HAMP mortgage modifications and other foreclosure alternatives to qualified borrowers; and

f. Concealing the error in its internal software program from approximately 2015 through October 2018.

54.     As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent business acts and practices, Plaintiff suffered injury in fact and loss of money and property, including:

a. Initiation of wrongful foreclosure proceedings;

b. Otherwise unavoidable sale of home to avoid foreclosure;

c. Increased fees and other costs to avoid or attempt to avoid foreclosure;

d. Loss in equity of home that was sold to avoid foreclosure; and

e. Increased costs associated with lowered credit scores.

55.     Because of Defendant's unlawful, unfair, and fraudulent business practices,

Plaintiff is entitled to relief, including attorneys' fees and costs, restitution, and permanent

injunction enjoining Defendant from its unlawful, fraudulent, and unfair practices.

## COUNT III:

## NEGLIGENCE PER SE

56.     Plaintiff incorporates by reference the above allegations as if fully set forth

herein.

57.     Defendant violated the District of Columbia's Unfair or Deceptive Trade

Practices Act, as fully disclosed. Moreover, as discussed above, Defendant also violated federal

HAMP regulations which stated that if a borrower meets all qualifying criteria, the servicer must

offer the modification.

58.     Defendant's violation of the District's Unfair or Deceptive Trade Practices Act

and HAMP regulations directly and proximately caused Plaintiff's injuries, including, but not

limited to the otherwise avoidable loss of home; increased fees and other costs to avoid or

attempt to avoid foreclosure; loss of equity in home; loss of opportunities to pursue other

refinancing or loss mitigation strategies; increased costs associated with lower credit scores; and

significant stress causing severe emotional distress.

59.     Plaintiff's injuries resulted from the kind of occurrence that the referenced DC

Code section and HAMP regulations were designed to prevent.

## PRAYER FOR RELIEF

**WHERFORE,** Plaintiff requests judgment be entered against Defendant and that the

Court grant the following relief:

        a.   Judgment against Defendant for Plaintiff's asserted causes of action;

        b.   An award of damages in the amount of $500,000;

        c.   An award of reasonable attorneys' fees and other litigation cost reasonably

           incurred; and

        d.   Any and all relief to which Plaintiff may be entitled.

### DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

Causton A. Toney, Esq, DC Bar #364055
606 Powhatan PL, NW, Washington, DC  20011
(202) 545-1043 (O)
(202)-330-5576 (F)
E-mail: caustontoney@yahoo.com

*Counsel for Plaintiff*

Rachel A. Curran
1315 11ᵗʰ St., NW, Apt. B
Washington, DC  20001
(202) 393-7065
E-mail: rcurrandc4@gmail.com

*Plaintiff*

## VERIFICATION

I, Rachel A. Curran, being first sworn on oath, state, under criminal penalties for the making of a false statement, that I have read the foregoing Complaint by me subscribed and attest that its contents are true and accurate to the best of my knowledge and belief.

Rachel A. Curran, Plaintiff

### DISTRICT OF COLUMBIA, SS

Subscribed and sworn to before me on this the ___16___ day of ___January___ 2020.

Notary Public

My commission expires: ___08-14-2024___

## VERIFICATION

I, Causton A. Toney, Esq., counsel for plaintiff Rachel Curran, do solemnly declare and affirm, under criminal penalties for the making of a false statement, that I have read the foregoing Complaint by me subscribed and that the factual statements contained therein are true to the best of my knowledge, information and belief.

Causton A. Toney, Esq. DC Bar #364055
Counsel for Plaintiff
606 Powhatan PL, NW
Washington, DC 20011
(202) 545-1043 (O)
(202)-330-5576 (FX)
E-mail: caustontoney@yahoo.com





**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

RACHEL A. CURRAN
Plaintiff

vs

Case Number 2020

WELLS FARGO BANK N.A.
Defendant

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Causton A. Toney, Esq.

*Clerk of the Court*

Name of Plaintiff's Attorney

606 POWHATAN PL. NW
Address
WASHINGTON DC 20011

By _____
Deputy Clerk

202 545 1043

Date _____

Telephone

如需翻译, 请打电话 (202) 879-4828     Veuillez appeler au (202) 879-4828 pour une traduction     Để có một bản dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화주십시오     ማስተርጎም ከፈለጉ በዚህ ቁጥር ይደውሉ (202) 879-4828    ກະລຸນາ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, *DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME.*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español

CV-3110 [Rev. June 2017]

Super. Ct. Civ. R. 4

# AFFIDAVIT OF PROCESS SERVER

### Superior Court of the District of Columbia
### Civil Division

**RECEIVED**
SUPERIOR COURT OF THE
DISTRICT

**FILED**
CIVIL ACTIONS BRANCH
2020 JAN 21 PM 6: 27

**JAN 2 1 2020**
Superior Court
of the District of Columbia
Washington, D.C.

**Rachel A. Curran**

     Plaintiff(s),

VS.

**Wells Fargo Bank, N.A.**

    Defendant(s).

Attorney: Causton A. Toney, Esq.

Law Office of Causton A. Toney, Esq.
606 Powhatan Pl., NW
Washington DC 20011



\*250882\*

**Case Number: 2020CA000384B**

Legal documents received by Same Day Process Service, Inc. on **01/17/2020** at **2:41 PM** to be served upon **Wells Fargo Bank, N.A., by serving Corporation Service Company at 1090 Vermont Ave., NW, #430, Washington, DC 20005**

I, **Kristina Hewett**, swear and affirm that on **January 21, 2020** at **9:15 AM**, I did the following:

Served **Wells Fargo Bank, N.A., by serving Corporation Service Company** by delivering a conformed copy of the **Summons; Complaint; Initial Order and Addendum** to **Max Schriner** as **Customer Service Associate & Authorized Agent** of **Wells Fargo Bank, N.A., by serving Corporation Service Company** at **1090 Vermont Ave., NW, #430 , Washington, DC 20005**.

**Description of Person Accepting Service:**
Sex: Male Age: 30 Height: 5ft9in-6ft0in Weight: 161-200 lbs Skin Color: Caucasian Hair Color: Blonde

**Supplemental Data Appropriate to this Service:**

I declare under penalty of perjury that the foregoing information contained in this affidavit is true and correct and that I am a professional process server over the age of 18 and have no interest in the above legal matter.

_____

**Kristina Hewett**
Process Server

**Same Day Process Service, Inc.**
**1413 K St., NW, 7th Floor**
**Washington DC 20005**
**(202)-398-4200**
info@samedayprocess.com

Internal Job ID: **250882**

District of Columbia, SS
Subscribed and Sworn to before me
this ____ day of _____ 2020

_____
K. Mack, Notary Public, D.C.
My commission expires February 29, 2024

Filed
D.C. Superior Court
02/11/2020 23:55PM
Clerk of the Court

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

RACHEL A. CURRAN,                )
                                 )
          Plaintiff,             )
                                 )
     v.                          )      Case No.: 2020 CA 000384 B
                                 )
WELLS FARGO BANK, N.A.,          )
                                 )      Judge Yvonne Williams
          Defendant.             )
                                 )
                                 )

**DEFENDANT'S MOTION FOR EXTENSION OF TIME**
**TO ANSWER OR OTHERWISE RESPOND TO PLAINTIFF'S COMPLAINT**

Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), by and through counsel, respectfully

files this motion, pursuant to Rules 6(b)(1)(A) and 55(a)(3)(A) of the D.C. Superior Rules of Civil

Procedure to request an extension up to and including February 25, 2020 to answer or otherwise

respond to Plaintiff's Complaint.  In support of this motion, Wells Fargo states:

1.     Plaintiff filed the Complaint in this case on January 17, 2020 and served Wells

Fargo with the Complaint on January 21, 2020.

2.     Wells Fargo's deadline to respond to the Complaint is February 11, 2020, and this

deadline has not yet passed.

3.     Counsel for Wells Fargo consulted with Plaintiff's counsel via telephone on

February 7, 2020, and Plaintiff's counsel consented to a two- to three-week extension.

4.     On February 10, 2020, counsel for Wells Fargo emailed, for Plaintiff counsel's

review and signature, a praecipe which reflected the parties' agreement as to a fourteen-day

extension.  Plaintiff's counsel did not respond to this email.

5.     On the morning of February 11, 2020, counsel for Wells Fargo followed up with

Plaintiff's counsel by email.  Plaintiff's counsel responded to this email around noon, stating that

he was in court for the morning but would "attend to" the praecipe later in the day once he returned

to his office.  Having not received any communication from Plaintiff's counsel by early evening,

counsel for Wells Fargo followed up again by email and left a voicemail shortly thereafter.

6.      As of the filing of this motion, Plaintiff's counsel has yet to provide any response

via email or telephone.

7.      Wells Fargo files the following motion in lieu of a praecipe, pursuant to Rules

6(b)(1)(A) and 55(a)(3)(A), to seek the Court's approval of a fourteen-day extension to respond to

the allegations in the Complaint.

8.      Good cause exists for the filing of this motion because Wells Fargo has relied on

Plaintiff counsel's representations that he would agree to a fourteen-day extension as contemplated

by Rule 55(a)(3)(B) of the D.C. Superior Court Rules of Civil Procedure.

9.      Good cause exists for the filing of this motion because Wells Fargo requires more

time to investigate, research, and respond to the issues presented by Plaintiff's Complaint.

10.     Wells Fargo requests this extension in good faith and not for any improper purpose

or delay.

11.     A proposed order has been filed with this motion.

Accordingly, Wells Fargo respectfully requests that the Court grant Wells Fargo an

extension of time up to and including February 25, 2020 to answer or otherwise respond to

Plaintiff's Complaint.

This the 11th Day of February, 2020.

Respectfully submitted,


/s/  Lawrence Slusky

Lawrence Slusky
DC Bar #888314329
Winston & Strawn LLP
1700 K St. NW
Washington, DC 20006
(202) 282-5000
lslusky@winston.com

Angela A. Smedley
Winston & Strawn LLP
200 Park Ave.
New York, NY 10166
(212) 294-6700
asmedley@winston.com

*Counsel for Wells Fargo Bank, N.A.*

eFiling for Courts - Electronic Service of Copies

Proof of Service

Jurisdiction: D.C. Superior Court
Cause/Case Number:   2020 CA 000384 B
Trace Number:      ED301J001846114
Court Assignment:   Civil Actions
Style/Case Name:    Rachel A Curran v Wells Fargo NA
Date/Time of Service: 2020-02-11 23:55:11Z
Serving Party Name:  Lawrence Slusky
Document(s):
ED301J00184611421120CurranMotiontoExtend.pdf


Parties of Record   -   Delivery Type
Causton Toney                Electronic

Clerk of the Court CAB Judge            Electronic

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | | |
|---|---|---|
| RACHEL A. CURRAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 2020 CA 000384 B |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N.A., | ) | |
| | ) | Judge Yvonne Williams |
| Defendant. | ) | |
| | ) | |
| | ) | |

**(PROPOSED) ORDER ON DEFENDANT'S MOTION FOR**
**AN EXTENSION OF TIME TO RESPOND TO PLAINTIFF'S COMPLAINT**

THIS MATTER is before the Court on Defendant's motion for an extension of time to answer or otherwise respond to Plaintiff's Complaint.  For good cause shown, Defendant's motion is hereby GRANTED.  Defendant will have up to and including February 25, 2020 to respond to the Complaint.

IT IS SO ORDERED.

_____

Hon. Yvonne Williams
Associate Judge, Superior Court of the District
of Columbia

**SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| RACHEL A. CURRAN, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2020 CA 000384 B |
| WELLS FARGO BANK, N.A., | ) |
| Defendant. | ) |
| | ) Judge Yvonne Williams |
| | ) |
| | ) |
| | ) |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 11, 2020, the foregoing motion and attached proposed order were filed electronically with the Clerk of the Court using the E-Filing (CaseFileXpress) system, which will send notification of such filing to counsel of record in this action.

This the 11th day of February, 2020.

/s/ Lawrence Slusky

Lawrence Slusky
DC Bar #888314329
Winston & Strawn LLP
1700 K St. NW
Washington, DC 20006
(202) 282-5000
lslusky@winston.com

D.C. Superior Court
02/12/2020 11:34AM
Clerk of the Court

## SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| RACHEL A. CURRAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No.: 2020 CA 000384 B |
| | ) |
| WELLS FARGO BANK, N.A., | ) |
| | )   Judge Yvonne Williams |
| Defendant. | ) |
| | ) |
| | ) |

### PRAECIPE

The Clerk of the Court will extend Defendant's deadline to respond to the Complaint by fourteen (14) days in the above captioned case. Counsel for the parties conferred on February 7, 2020 and agreed that pursuant to Rule 55(a)(3)(B) of the D.C. Superior Court Rules of Civil Procedure, Defendant will have up to and including **February 25, 2020** to answer or otherwise respond to Plaintiff's Complaint.

This the 10th day of February, 2020.

_____                          /s/ Lawrence Slusky

Causton A. Toney, Esq.                            Lawrence Slusky
DC Bar #364055                                    DC Bar #888314329
606 Powhatan Pl., NW                              Winston & Strawn LLP
Washington, DC 20011                              1700 K St. NW
(202) 545-1043                                    Washington, DC 20006
                                                  (202) 282-5000
*Counsel for Plaintiff*
                                                  Angela A. Smedley
                                                  Winston & Strawn LLP
                                                  200 Park Ave.
                                                  New York, NY 10166
                                                  (212) 294-6700

                                                  *Counsel for Wells Fargo Bank, N.A.*

eFiling for Courts - Electronic Service of Copies

Proof of Service

Jurisdiction: D.C. Superior Court
Cause/Case Number:    2020 CA 000384 B
Trace Number:        ED301J001846697
Court Assignment:    Civil Actions
Style/Case Name:      Rachel A Curran v Wells Fargo NA
Date/Time of Service: 2020-02-12 11:34:25Z
Serving Party Name:  Lawrence Slusky
Document(s):
ED301J001846697PraecipeCurran.pdf


Parties of Record   -   Delivery Type
Causton Toney              Electronic

Clerk of the Court CAB Judge            Electronic